# UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

| | | |
|---|---|---|
| WE THE PATRIOTS USA, INC; JANE DOE, on her own behalf and on behalf of Child 1; | : : : : | No. 25-5239 |
| v. | : : | |
| VENTURA UNIFIED SCHOOL DISTRICT; ANTONIO CASTRO, in his official capacity only; ERIK NASARENKO, in his official capacity only; SARA BRUCKER, in her official capacity only; TONY THURMOND, in his official capacity only; ERICA PAN, in her official capacity only; | : : : : : : : : : : | September 2, 2025 |

## EMERGENCY MOTION FOR AN INJUNCTION PENDING APPEAL (RELIEF REQUESTED BY NO LATER THAN 5:00 PM PST, SEPTEMBER 8, 2025

The Plaintiffs-Appellants – We The Patriots USA, Inc. and Jane Doe – hereby move the Court for an injunction pending the resolution of the above-captioned appeal enjoining the Appellees from enforcing Cal. Health and Safety Code § 120335 against Jane Doe and members of We The Patriots USA, Inc.

## BACKGROUND

### I.     Factual Background.

Jane Doe religiously objects to the vaccinations required to attend K-12 school in California because of their connection to cell lines derived from aborted fetuses.

Ex. A, ¶¶ 3-8. Her son was a student in the Ventura Unified School District (VUSD) since 2014-15. *Id*., ¶ 2. In March 2015, Doe's son received a religious exemption from VUSD. *Id*., ¶¶ 9-10.

Doe obtained homeoprophylaxis immunizations for her son that did not violate her religious beliefs and submitted proof to VUSD in August 2022, which accepted him. *Id*., ¶¶ 11-14. On December 12, 2024, VUSD informed Doe that it would exclude Child 1 from school effective January 7, 2025 due to his inadequate immunization status. *Id*., ¶¶ 15-16 His last full day of attendance was December 20, 2024. *Id*., ¶ 17.  VUSD then excluded him from school. *Id*., ¶ 18.

Doe made multiple, unsuccessful efforts to resubmit immunization records and religious exemption requests. *Id*., ¶¶ 19-21. VUSD summoned Doe and her husband to two mandatory School Attendance Review Board (SARB) meeting where a Ventura County prosecutor, Sara Brucker, threatened Doe with criminal prosecution for truancy if she did not vaccinate her son and then had her criminally cited when she steadfastly refused.[1] *Id*., ¶¶ 22-38.

The impact on Doe's son has been devastating. *Id*., ¶ 39. He struggles with social development because of disabilities, and has gone from an honor roll student who regularly received "A" and "B" grades to being award "F" grades on all of his

---

[1] Counsel for Appellees Nasarenko and Brucker represented to the undersigned on August 11, 2025 that Nasarenko declined to prosecute the truancy citation.

coursework. *Id.*, ¶¶ 40-42. Doe cannot afford to send her son to private school even if it were an option and cannot homeschool him because both she and her husband work. *Id.*, ¶¶ 43-44. Doe's son remains excluded from VUSD and all California schools to this day. *Id.*, ¶¶ 46-49.

## II.  Procedural History.

The Appellants filed the underlying action on May 22, 2025 and moved for emergency relief on May 24, 2025. The district court denied the application because the school year was almost at an end and because it found Jane Doe waited too long to seek judicial relief. The Appellants renewed their application for emergency relief on August 12, 2025, and the district court denied it on August 15, 2025. Ex. K. The Appellants appealed on August 18, 2025. Doe then sought an injunction pending appeal from the district court, which was denied on August 29, 2025. Ex. L. That same day, the district court stayed the underlying action pending the Court's decisions in *Royce v. Pan*, No. 25-2504 (C.A.9); and *Doescher v. Aragon*, No. 25-4531 (C.A.9). Ex. M.

## **LEGAL STANDARD**

The injunction pending appeal standard is "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where

the public interest lies." *Al Otro Lado v. Wolf*, 952 F.3d 999, 1006-07 (C.A.9 2020) (cleaned up). "The first two factors ... are the most critical; the last two are reached only [o]nce an applicant satisfies the first two factors." *Id*. at 1007 (cleaned up).

## **ARGUMENT**

### I.     The Court Has Jurisdiction Because The District Court's Actions Clearly Denied The Appellants' Application For A Preliminary Injunction.

The Appellants address the Court's August 20, 2025 *sua sponte* order directing the parties to address in their briefs whether it has jurisdiction over this appeal because they recognize that question, left unresolved, could merit the denial of their motion. There is no jurisdictional bar to the granting of this motion.

"[O]rders ruling on TRO motions are typically not appealable." *Barbaria v. Blinken*, 87 F.4th 963, 975 (C.A.9 2023) (cleaned up). Because they only provide temporary relief, "TROs do not count as injunctions under [18 U.S.C.] § 1292(a)(1)." *Id*. at 975 (cleaned up). A practical problem arises in reviewing TROs because "they can issue without the adverse party receiving notice or an opportunity to respond…, leaving [this Court] with an incomplete record." *Id*. at 976. "[A] denial of a TRO may be appealed if the circumstances render the denial tantamount to the denial of a preliminary injunction." *Id*. at 976 (cleaned up).

Review, and by extension, an injunction pending appeal are appropriate in this case because the district court (1) explicitly denied the Appellants' application for a

preliminary injunction and (2) stayed the underlying case, thus prohibiting them from pursuing further preliminary injunctive relief.

First, on August 15, 2025, the district court denied the Appellants' application for a preliminary injunction after briefing from the parties: "Plaintiffs' Renewed Emergency Application for a Temporary Restraining Order and Preliminary Injunction (Dkt. No. 50) is therefore **<u>DENIED</u>**." Ex. K. While the district court's order denied the Appellants' application for a TRO and took great pains to address alleged procedural defects, it also denied their preliminary injunction application.

Second, on August 29, 2025, the district court granted Appellee Pan's motion to stay the case pending this Court's resolution of *Royce v. Pan*, No. 25-2504 (C.A.9); and *Doescher v. Aragon*, No. 25-4531 (C.A.9). Ex. L. The stay order foreclosed any more procedurally palatable chance that the Appellants had of obtaining preliminary injunctive relief from the district court. It converts the district court's order denying the Appellants' application for a temporary restraining order into a denial of a preliminary injunction. Thus, the district court denied the Appellants a preliminary injunctive, and this Court has jurisdiction over this motion.

## II. The Appellants Show A Strong Likelihood Of Success On The Merits.

### A. *Mahmoud v. Taylor* requires strict scrutiny for laws that burden parents' right to raise their children in their religious beliefs.

*Mahmoud v. Taylor*, 145 S.Ct. 2332, 2341 (Jun. 27, 2025) granted a preliminary injunction to parents who sought religious exemptions to the inclusion

of "LGBTQ+ inclusive" storybooks in a school curriculum. *Mahmoud* reaffirmed that parents have the right "direct the religious upbringing of their children." 145 S.Ct. at 2350 (cleaned up). "[G]overnment policies that substantially interfere with the religious development of children…" violate that right *Id*. (cleaned up). The First Amendment's protects "the ability of those who hold religious beliefs of all kinds to live out their faiths in daily life through the performance of religious acts." *Id*. at 2351 (cleaned up). *Mahmoud*'s analysis examined the religious practices and how they were burdened. It noted that, "for many Christians, Jews, Muslims, and others, the religious education of children is not merely a preferred practice but rather a religious obligation." *Id*. at 2351. The *Mahmoud* parents fell within this category. *Id*. at 2351. The First Amendment's protections on this score extend to choices "outside the home." *Id*. at 2351. Lastly, the Court found that, "due to financial and other constraints…, many parents have no choice but to send their children to a public school." *Id*. at 2351 (cleaned up). Thus, the First Amendment limits "the government's ability to interfere with a student's religious upbringing," even "in a public school setting." *Id*. at 2351.

*Mahmoud* instructs courts to conduct a fact-intensive inquiry into whether "a law substantially interferes with the religious development of a child…." *Id*. at 2353 (cleaned up). The focus of the inquiry is the "very real threat of undermining

the religious beliefs that the parents wish to instill in their children" posed by the requirement at issue. *Id.* at 2361 (cleaned up).

*Mahmoud* held that the books used by the Montgomery School Board did pose a real threat because they imposed "upon children a set of values and beliefs that are hostile to their parents' religious beliefs…" and "exert upon children a psychological pressure to conform to their specific viewpoints." *Id.* at 2355. Further, the presentation of the books by authority figures and the normative discussions that would take place would substantially interfere with the parents' ability to direct their children's religious upbringing. *Id.* at 2355.

*Mahmoud* may not be limited to the context of an educational curriculum or its specific facts as many courts did with *Wisconsin v. Yoder*. *Mahmoud* forecloses that approach by repudiating previous approaches to *Yoder*: "We have never confined *Yoder* to its facts. To the contrary, we have treated it like any other precedent. We have at times relied on it as a statement of general principles…. And we have distinguished it when appropriate." *Id.* at 2357.

Lastly, *Mahmoud* rejects the notion that religiously objecting parents have the option to homeschool their children and that this claimed "option" makes the burden of the law less substantial. It noted that education is expensive and that "[i]t is both insulting and legally unsound to tell parents that they must abstain from public education in order to raise their children in their religious faiths, when alternatives

7

can be prohibitively expensive and they already contribute to financing the public schools." *Id.* at 2360.

Here, Doe avers that she is raising her son in her religious beliefs regarding the sanctity of life and the purity of the body as the temple of the Holy Spirit. Ex. A, ¶¶ 4-6. Doing so is "a sacred and God-given obligation…" for her. *Id.*, ¶ 6. Requiring her son to receive the required vaccinations would undermine the very foundations of the religious teaching that she has been raising him in and jeopardize entirely his future adherence to it. *Id.*, ¶¶ 50-59. That burden – placed on Doe – is precisely the kind of burden that *Mahmoud* subjects to strict scrutiny.

## B. The Appellants are entitled to strict scrutiny under traditional free exercise analysis for three reasons.

First, *Tandon v. Newsom* establishes that a law is not generally applicable when it permits any secular activity that undermines its interest the same way religious activity would. California's medical exemption does just that. Second, under *Doe v. San Diego Unified School District*, 19 F.4th 1173 (C.A.9 2021), the Appellants show that medical exemptions historically substantially outnumbered religious exemptions in California. Third, the Appellants have presented a colorable parental rights claim in connection with their Free Exercise claim, entitling them to strict scrutiny under the Court's hybrid-rights precedent.

### 1. A law lacks general applicability when any secular activity undermines government interest like religious activity would.

8

"[L]aws incidentally burdening religion are ordinarily not subject to strict scrutiny under the Free Exercise Clause so long as they are neutral and generally applicable…." *Fulton v. City of Philadelphia, Pennsylvania*, 141 S.Ct. 1868, 1876 (2021) (cleaned up)."[G]overnment regulations are not neutral and generally applicable, and therefore trigger strict scrutiny under the Free Exercise Clause, whenever they treat *any* comparable secular activity more favorably than religious exercise." *Tandon v. Newsom*, 141 S.Ct. 1294, 1296 (2021).

"[W]hether two activities are comparable for purposes of the Free Exercise Clause must be judged against the asserted government interest that justifies the regulation at issue." *Id*. Courts must compare "the risks various activities" pose to the government's asserted interest, not the reasons for those activities. *Id*. A law is not generally applicable when it "prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Fulton*, 141 S.Ct. at 1877. "Comparability is concerned with the risks various activities pose, not the reasons why people gather." *Tandon*, 141 S.Ct. at 1296. Comparability does not consider why an exemption is wise, only the risks that exemptions pose to the law's generally applicable object.

California made findings as to its interests in SB276's amendments to California's immunization requirements. "Immunizations are public health measures to ensure protection against debilitating and sometimes fatal diseases."

9

2019 Cal. Legis. Serv. Ch. 278 (S.B. 276), § 1(a). "Immunization requirements have led to greatly diminished or eliminated debilitating childhood diseases, such as measles. 2019 Cal. Legis. Serv. Ch. 278 (S.B. 276), § 1(b). California also recognized that "herd or community immunity" – as the result of "effective immunization" – "not only protect[s] immunized individuals from disease, but also [has] the ability to provide indirect protection for which immunizations are not effective or safe." 2019 Cal. Legis. Serv. Ch. 278 (S.B. 276), § 1(f). "Herd immunity successfully occurs if and when a sufficient portion of the community is immune. Herd immunity prevents sustained transmission of disease even when immunization coverage is below 100 percent." 2019 Cal. Legis. Serv. Ch. 278 (S.B. 276), § 1(g). California clearly stated that its interest in the immunization requirement is to prevent the spread of specific childhood diseases and mitigate their consequences.

Medical and religious exemptions pose identical risks to this interest. A medically exempt child undermines that interest in the same way a religiously exempt child does. No childhood disease will weigh whether a child is not immunized for medical or religious reasons before it infects them. No childhood disease will carefully consider whether an unvaccinated child is not immunized for medical reasons or for religious reasons before it spreads from them to others. The risks posed to and by each child are identical. *Tandon* requires the Court to

10

compare the risks posed to and by a medically exempt child and a religiously exempt child on a one-to-one basis. Those risks to California's interests are identical. Thus, Cal. Health and Safety Code § 120335 lacks general applicability because of its medical exemption.

### 2. Medical exemptions substantially outnumbered religious exemptions, undermining § 120335's general applicability.

*Doe v. San Diego Unified School District* suggests a comparability analysis based on the collective risks posed by religious and medical exemptions. The risks posed by religious exemptions are at least comparable to those posed by medical exemptions. In fact, the collective number of medical exemptions poses a far greater risk than religious exemptions ever did in California.

The California Department of Public Health collected detailed statistics on kindergartner immunization rates, medical exemptions and personal belief exemptions for the 2014-15 and 2015-16 school years. In 2014-15, California reported a 90.4% kindergartner immunization rate in public and private schools. Ex. B, p. 4 (Table 1). Religious-based exemptions were 0.52% of exempted students. *Id*. Medical exemptions – "permanent medical exemptions" and "health care practitioner counseled" – were 1.83% of exempt California students – more than 3 times the number of religiously exempt students. *Id*. In 2015-16, California reported a 92.9% kindergartner immunization rate in public and private schools. *Id*. Religious based exemptions were 0.56% of exempt students. *Id*. Medical exemptions

11

accounted for 1.98% of exempt students – more than 3 times the number of religiously exempt children. *Id*.

The data shows that, before California's repeal of the personal belief exemption (including religious exemption) in 2016, religious exemptions had far less of an impact on California's immunization rates than medical exemptions did. Thus, medical exemptions posed a far greater risk to California's interest in preventing the spread of contagious diseases than religious exemptions did.

In 2015-16, Ventura County schools, including VUSD, reported a 94.2% kindergartner immunization rate in public and private schools. Ex. B, p. 10 (Table 4). Permanent medical exemptions were 0.2% of exempt students. *Id*. Healthcare provider advised exemptions accounted for 1.94% of exempt students. *Id*. at p. 16 (Table 6). In other words, medical exemptions accounted for 2.14% of exemptions in Ventura County. Conversely, religious exemptions accounted for 0.54% of exempt students. *Id*. at p. 16 (Table 6). That means that medical exemptions outnumbered religious exemptions by more than 4 times.

After California stopped reporting detailed data as to personal belief exemptions in 2016-17, California and VUSD reported the following percentages of permanent medical exemptions for kindergarteners for every year that data is available since 2015-16:

| Year | California | VUSD |
|---|---|---|
| 2016-17 | 0.5%[2] | 0.6%[3] |
| 2017-18 | 0.7%[4] | 1.0%[5] |
| 2018-19 | 0.9%[6] | 1.2%[7] |
| 2019-20 | 1%[8] | 1.1%[9] |
| 2020-21 | 0.6%[10] | 0.7%[11] |
| 2021-22 | 0.3%[12] | 0.2%[13] |
| 2022-23 | 0.2%[14] | 0.2%[15] |
| 2023-24 | 0.1%[16] | 0.1%[17] |

California and VUSD tolerate an aggregate percentage of medical exemptions that fluctuated from being less than the number of religious

[2] Ex. C, p. 16 (Table 1).
[3] Ex. C, p. 20 (Table 3).
[4] Ex. D, p. 17 (Table 1).
[5] Ex. D, p. 21 (Table 3).
[6] Ex. E, p. 17 (Table 1).
[7] Ex. E, p. 21 (Table 3).
[8] Ex. F, p. 17 (Table 1).
[9] Ex. F, p. 21 (Table 3).
[10] Ex. G, p. 13 (Table 1).
[11] Ex. G, p. 19 (Table 3).
[12] Ex. G, p. 13 (Table 1)
[13] Ex. G, p. 19 (Table 3).
[14] Ex. I, p. 13 (Table 1).
[15] Ex. H, p. 19 (Table 3).
[16] Ex. J, p. 13 (Table 1).
[17] Ex. I, p. 14 (Table 2).

exemptions claimed in 2015-16 to being double the number of religious exemptions claimed in 2015-16. In other words, they permit secular exemptions that, in the aggregate, do twice as much to undermine its interest in preventing the spread of contagious childhood diseases as religious exemptions did. Religious and medical exemptions *are comparable* in the aggregate under *Doe*.

### 3. The Appellants' Hybrid Rights Claim Receives Strict Scrutiny.

*San Jose Christian College v. City of Morgan Hill*, 360 F.3d 1024, 1031 (C.A.9 2004) recognized that *Employment Div. v. Smith*, 494 U.S. 872 (1990) created an exception to the rule that rational basis review applies when a law is neutral and generally applicable. Under this exception, "the First Amendment [still] bars application of a neutral, generally applicable law to religiously motivated action if the law implicates not only the Free Exercise Clause alone, but the Free Exercise Clause in conjunction with other constitutional protections, such as freedom of speech and of the press [.]" *San Jose Christian College*, 360 F.3d at 1031 (cleaned up). This Court terms claims of this nature "hybrid rights claim[s]" and applies strict scrutiny. *Id*. at 1031 (cleaned up). Hybrid rights claims arise when a free exercise claim is coupled with a "colorable claim that a companion [constitutional] right has been violated – that is, a fair probability or a likelihood, but not a certitude, of success on the merits." *Id*. at 1032.

14

*Smith* recognized "the right of parents… to direct the education of their children." *Smith*, 494 U.S. at 881 (citing *Pierce v. Society of Sisters*, 268 U.S. 510 (1925) and *Wisconsin v. Yoder*, 406 U.S. 205 (1972)). *Yoder* recognized that *Pierce* had established "a charter of the rights of parents to direct the religious upbringing of their children." 406 U.S. at 233. Both cases establish that parents may refuse to permit their children to perform certain acts as part of their direction of how the children are raised. *Kennedy v. Bremerton School District*, 597 U.S. 507, 524 (2022) (recognizing a First Amendment right to abstain from "physical acts."). Thus, when parents will not permit their children to perform a physical act because of their religious beliefs, the parents have stated a colorable companion claim to a free exercise claim and are entitled to the strict scrutiny applied to hybrid rights claims. The Appellants have done so, and are entitled to strict scrutiny.

**C. Cal. Health and Safety Code § 120335 cannot survive strict scrutiny.**

"Strict scrutiny requires the [government] to further interests of the highest order by means narrowly tailored in pursuit of those interests." *Tandon*, 141 S.Ct. at 1298 (cleaned up).

The Appellees' interests are not "of the highest order." First, the Appellees are not inflexible in preventing the spread of contagious diseases. They show ample flexibility when it comes to granting permanent or long-lasting medical exemptions – both by discretionary acts and by Cal. Health and Safety Code §

15

120335. They extend conditional admission to unvaccinated children if they catch up to California's immunization requirements by a given time period. Cal. Health & Safety Code § 120340. They extend unconditional admission to foster children whose immunization records are missing. Cal. Health Safety Code § 120341. They do not exclude children who receive special education services pursuant to an individualized education program. Cal. Health and Safety Code § 120335(h). They provide personal belief exemptions for other immunizations required by the California Department of Public Health. Cal. Health & Safety Code § 120338. In sum, California creates substantial flexibility in how the Appellees may pursue California's interests. That flexibility belies that these interests are of such a high order as to restrict religious exercise without violating the First Amendment.

Second, the Appellees accepted Child 1's alternative immunizations and permitted him to continue attending school for over two and a half years before excluding him. The Appellees took no steps to protect their interests from the supposed threat that Child 1 posed. That indifference also belies that the Appellees' interests are "of the highest order."

The Appellees also fail narrow tailoring. Cal. Health and Safety Code § 120335 imposes a sweeping mandate that provides no flexibility, accommodation, or understanding to conscientious objectors. Conscientious objectors are faced with a choice between violating their religious beliefs or being excluded from

16

public and private schools in California. For many, including Doe, their only practical option is relocation. "Forced migration of religious minorities[, however,] was an evil that lay at the heart of the Religion Clauses." *Yoder*, 406 U.S. at 218 n.9. *Yoder* makes clear that laws and conduct that force migration are highly unlikely to survive a narrow tailoring analysis. Cal. Health and Safety Code § 120335 is no different.

The Appellees had many options at their disposal to accommodate conscientious objectors. First, they could have statutorily or administratively excluded all vaccine-exempt children from school during a contagious disease outbreak. This solution allows the children of conscientious objectors to enjoy the same benefits as their peers under the California Constitution's guarantee of a right to education while containing the spread of contagious disease. They did not. Second, the Appellees could have identified a herd immunity percentage for schools, counties, and/or the state of California and divided exemptions equally between medical exemptions and religious exemptions, thus accommodating both religious and medical exemptions. They did not. Third, the Appellees could have provided for alternative immunization practices of the kind that Doe sought to provide accommodation to conscientious objectors, and they could have coupled that solution with any of the others that the Appellants propose. The Appellees made no statutory effort to do so, and they have now reversed course on their

17

previous acceptance of it. As Doe's son indicates, there is no evidence that such alternative immunization practices could not provide the Appellees with a reasonable alternative that would facilitate their interest.

Because the Appellees did not provide any of these reasonable alternatives, Cal. Health and Safety Code § 120335 cannot survive strict scrutiny.

### III.   The Appellants Show Irreparable Harm.

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *see also Tandon*, 141 S.Ct. at 1297 (same). "Irreparable harm is relatively easy to establish in the First Amendment case because the party seeking the injunction need only demonstrate the existence of a colorable First Amendment claim." *Fellowship of Christian Athletes v. San Jose Unified School District Board of Education*, 82 F.4th 664, 694 (C.A.9 2023) (cleaned up). The Appellants have stated a colorable Free Exercise claim and a colorable hybrid-rights claim. Since both claims sound in the First Amendment, Doe has demonstrated irreparable harm.

Doe also shows irreparable harm as a practical matter. Every day that passes is a day of education lost to her son forever. Ex. A, ¶¶ 39-44. Her disabled son is losing the valuable social experience associated with public schooling that is critical for his social development. Ex. A, ¶ 40. His continued exclusion from school is causing harm to him that will follow him for the rest of his life.

18

Monetary damages are also unavailable. Qualified immunity shields the defendants from damages claims. The Eleventh Amendment bars damages claims against California, and a *Monell* claim is unlikely to succeed against VUSD. Doe's only hope for justice is injunctive relief.

The district court declined to find irreparable harm because it faulted Jane Doe for waiting as long as she did to seek relief. That does not merit denying relief. Jane Doe is no activist. She is a simple, mild-mannered mom who tried everything she could to get her son back to school without making a federal case out of her situation. Her efforts met with a criminal citation for truancy, which opened her eyes to the fact that she was in a legal war with unreasonable laws being enforced by unreasonable people. Only then did she realize that a federal case was the only way to get her son back to school. If decent people unfamiliar with the legal remedies available can be denied judicial relief in their direst moments simply because they tried to do the decent thing and work out a compromise, then the Court will only hasten our society's decent into bitter political and legal fights.

Jane Doe's decent behavior is not a ground to deny her emergency relief, particularly when her son is suffering from lifelong adverse consequences.

## IV.  The Balance of Equities and Public Interest Favor the Appellants.

"Where, as here, the party opposing injunctive relief is a government entity, the third and fourth factors – the balance of equities and the public interest –

merge." *Fellowship of Christian Athletes*, 82 F.4th at 695. Because the Appellants have "raised serious First Amendment questions, that alone compels a finding that the balance of hardships tips sharply in [their] favor." *Id*. at 695 (cleaned up).

Even if it did not, excluding a single child from school attendance after permitting him to attend for over two and a half years in a condition of non-compliance undercuts entirely the argument that the Appellees will incur any hardships by permitting him to return to school during this case. Child 1's attendance caused them no hardships for two and a half years, and nothing changed to make continued attendance during this case a greater hardship.

Lastly, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Id*. at 695 (cleaned up). For these reasons, the Court should find that the balance of equities tips in the Appellants' favor; and that an injunction pending appeal is in the public interest.

## CONCLUSION

The Court should grant an injunction pending appeal enjoining the Appellees from enforcing Cal. Health and Safety Code § 120335 against Jane Doe and members of We The Patriots USA, Inc.

20

Dated: September 2, 2025          */s/ Cameron L. Atkinson*

Cameron L. Atkinson, Esq.
ATKINSON LAW, LLC
122 Litchfield Rd., Ste. 2
P.O. Box 340
Harwinton, CT 06791
Telephone: 203.677.0782
Email: catkinson@atkinsonlawfirm.com

/s/ *Jennifer W. Kennedy*

Jennifer W. Kennedy, Esq.
JENNIFER W. KENNEDY
ATTORNEY AT LAW
61 S. Baldwin Ave #1626
Sierra Madre, CA 91025-7076
(626) 888-2263
jenniferkennedyesq@gmail.com

*Attorneys for Plaintiffs-Appellants*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that:

1. This motion complies with length limitations provided by Local Circuit Rule 27-1(1)(d) because it does not exceed 20 pages, excluding the parts exempted by the same rule.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32 and the typestyle requirements of Fed. R. App. P. 32 because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point font.


Dated: September 2, 2025

<u>/s/ Cameron L. Atkinson /s/</u>
Cameron L. Atkinson

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on September 2, 2025, an electronic copy of the foregoing Emergency Motion For An Injunction Pending Appeal was filed with the Clerk of the Court using the ECF system and thereby served upon all counsel appearing in this case.

<u>/s/ Cameron L. Atkinson /s/</u>
Cameron L. Atkinson